UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FALLON VALDEZ,

                              Plaintiff,

         v.

ENLARGED CITY SCHOOL DISTRICT OF
MIDDLETOWN, KAREN MARCONI, and
RACHEL KOONTZ,

                              Defendants.

---

No. 21-CV-9261 (KMK)

OPINION & ORDER

Appearances:

Gregory R. Preston, Esq.
Preston & Wilkins, LLC
Levittown, NY
*Counsel for Plaintiff*

Howard M. Miller, Esq.
Jacqueline Giordano, Esq.
Bond, Schoeneck & King, PLLC
Garden City, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Fallon Valdez ("Plaintiff") brings this Action against the Enlarged City School District of

Middletown (the "District"), Karen Marconi ("Marconi"), and Rachel Koontz ("Koontz";

collectively, "Defendants") pursuant to 42 U.S.C. §§ 2000e, *et seq.* (Title VII of the Civil Rights

Act or "Title VII"), 28 U.S.C. § 1981 ("§ 1981") and 28 U.S.C. § 1983 ("§ 1983"), alleging

discrimination on the basis of national origin. (*See generally* Am. Compl. ("FAC") (Dkt. No.

19).)  Before the Court is Defendants' Motion To Dismiss (the "Motion").  (*See* Not. of Mot.

(Dkt. No. 27).)  For the reasons that follow, Defendants' Motion To Dismiss is granted in part and denied in part.

## I.  Background

### A.  Operative Pleading

As a threshold matter, Defendants argue that the allegations in Plaintiff's First Amended Complaint (the "FAC") directly contradict her Complaint and so should be disregarded.  (Defs' Mem. of Law in Supp. of Mot. to Dismiss ("Defs' Mem") 8–10 (Dkt. No. 32).)  Defendants rely primarily on this Court's decision in *James v. Gage*, No. 15-CV-106, 2019 WL 1429520 (S.D.N.Y. Mar. 29, 2019) and the cases cited therein to support their position.  *Id.* at *6. However, this case differs in an important respect from *James*.  In *James*, the plaintiff omitted several exhibits that had been filed with his first amended complaint when filing his second amended complaint, *see id.* at 7, while here, Plaintiff submitted the FAC to replace the Complaint.  The distinction between omitting exhibits and amending a pleading is key because, as explained in *James*, "exhibits will inevitably become part of the evidentiary record during discovery, and the Court will thus be required to consider them as evidence at the summary judgment stage, unlike prior inconsistent pleadings in a complaint which are 'controvertible, not conclusive, admissions.'"  *Id.* (quoting *Zitz v. Pereira*, 119 F. Supp. 2d 133, 140 (E.D.N.Y. 1999)).  Moreover, "there are valid reasons why a plaintiff would amend a complaint in a contradictory fashion.  For example, a plaintiff may acquire new information through . . . [her] own investigation[] that fundamentally alters its theory of the case."  *Palm Beach Strategic Income, LP v. Salzman*, No. 10-CV-261, 2011 WL 1655575, at *6 (E.D.N.Y. May 2, 2011), *aff'd*, 457 F. App'x 40 (2d Cir. 2012) (summary order).  Plaintiff's counsel has submitted a Declaration stating that after Defendants objected to his allegations, he spoke to his client about the relevant allegations and revised the Complaint to reflect the new facts his client provided.

(*See* Decl. of Gregory R. Preston ("Preston Decl.") 1 (Dkt. No. 33).)  While Plaintiff's counsel arguably should have completed a more thorough investigation of his client's claims prior to filing the Complaint, Plaintiff's counsel properly requested and received the Court's leave to file the FAC, which is all the Federal Rules require.  *See* Fed. R. Civ. P. 15(a)(2) ("[A] party may amend its pleading . . . with . . . the court's leave.  The court should freely give leave when justice so requires.").  Under these circumstances, the Court finds that the holding in *James* does not apply and will consider only the allegations raised in the FAC in deciding the instant Motion.

B.  Factual Background

The following facts are drawn from the FAC and are assumed true for the purposes of resolving the instant Motion.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Plaintiff is Hispanic American and was hired by the District on October 19, 2018 as an Accountability Specialist in the District's Special Services Department.  (FAC ¶ 13.)  Plaintiff was trained in her duties by Ingrid Molloy ("Molloy"), a Caucasian District employee.  (*Id.* ¶ 16.)  Molloy apparently trained Plaintiff on how to process state mandated Committee on Special Education results notices ("CSE Notices"), and Plaintiff asserts that "any error in processing the [CSE Notices] was as a result of the training from [Molloy]."  (*Id.* ¶¶ 24–25.)

At some point during May 2019, the District terminated Plaintiff for "her failure to ensure that [CSE Notices] were timely mailed to parents within five days after their children's Committee on Special Education meeting."  (*Id.* ¶ 21.)  Marconi and Koontz both recommended Plaintiff's termination, and her termination was a direct result of their recommendations.  (*Id.* ¶¶ 22–23.)

Molloy processed CSE Notices in the same manner that Plaintiff processed them.  (*Id.* ¶ 26.)  However, Molloy was not disciplined or terminated for how she processed CSE Notices or how she trained Plaintiff to process CSE Notices.  (*Id.* ¶ 27.)

C.  Procedural History

Plaintiff filed this Action on November 9, 2021.  (*See* Compl.)  On December 12, 2021, Defendants submitted a letter requesting a pre-motion conference to discuss briefing a motion to dismiss.  (*See* Letter from Howard M. Miller, Esq. to Court (December 22, 2021) (Dkt. No. 8).) The Court held a conference on February 10, 2022, at which it granted a motion from Plaintiff to amend her Complaint.  (*See* Dkt. (minute entry for February 10, 2022).)  Plaintiff filed the FAC on February 24, 2022.  (*See* FAC.)  On March 4, 2022, Defendants again requested to file a motion to dismiss.  (*See* Letter from Howard M. Miller, Esq. to Court (March 4, 2022) (Dkt. No. 20).)  At a conference on April 6, 2022, the Court set a briefing schedule.  (*See* Dkt. (minute entry for April 6, 2022); Order (Dkt. No. 24).)  On May 18, 2022, Defendants filed their Motion to Dismiss and accompanying papers.  (*See* Not. of Mot.; Defs' Mem; Affirm. of Jacqueline Giordano (Dkt. No. 29).)  After requesting and receiving an extension (Dkt. Nos. 30–31), Plaintiff filed her response, (*see* Pl's Mem. of Law in Opp'n to Mot. To Dismiss ("Pl's Opp'n") (Dkt. No. 32); Preston Decl)  After requesting and receiving an extension (*see* Dkt. Nos. 34–35), Defendants filed their Reply, (*see* Defs' Reply (Dkt. No. 36)).

II.  Discussion

A.  Standard of Review

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'"  *Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2

(D. Conn. June 3, 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003), *cert. denied*, 540 U.S. 1012 (2003)).

    1.  Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (citation and quotation marks omitted). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question").

The Second Circuit has explained that a challenge to subject-matter jurisdiction pursuant to Rule 12(b)(1) may be facial or fact-based. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, "the plaintiff has no evidentiary burden" and a court must determine whether the plaintiff asserting standing "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.* (alterations omitted) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). In making such a determination, a court must accept as true all allegations in the complaint and draw all inferences in the plaintiff's favor. *Id.* at 57. However, where a Rule 12(b)(1) motion is fact-based and a defendant proffers evidence outside the pleadings, a plaintiff must either come forward with controverting evidence or rest on the pleadings if the evidence offered by the defendant is immaterial. *See Katz v. Donna Karan Co., LLC*, 872 F.3d 114, 119 (2d Cir. 2017). If the

extrinsic evidence presented by the defendant is material and controverted, the Court must make findings of fact in aid of its decision as to standing.  *See Carter*, 822 F.3d at 57.

        2.  Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id*. (alteration and quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id*.; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id*. at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior

era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B.  Analysis

Plaintiff brings claims pursuant Title VII, § 1981, and § 1983.  (*See generally* FAC.)  The Court addresses each of these claims below.

1.  Title VII Claim

Defendants argue that Plaintiff has failed to allege facts sufficient to raise a plausible claim for relief under Title VII.  (Defs' Mem 13–15; Defs' Reply 7–9.)

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  "The substantive standards applicable to claims of employment discrimination under Title VII . . . are . . . well established."  *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (citation omitted).  To state a prima facie case

7

of discrimination under Title VII, a plaintiff "must show: (1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008); *see also Borzon v. Green*, No. 16-CV-7385, 2018 WL 3212419, at *7 (S.D.N.Y. June 29, 2018) (same), *aff'd*, 778 F. App'x 16 (2d Cir. 2019).  To satisfy the fourth requirement "[a]n inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn v. City of N.Y.*, 795 F.3d 297, 312 (2d Cir. 2015) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).

"Employment discrimination claims need not contain specific facts establishing a prima facie case of discrimination."  *See Drew v. Plaza Constr. Corp.*, 688 F. Supp. 2d 270, 275 (S.D.N.Y. 2010) (citation omitted).  "Rather, an employment discrimination complaint 'must include only a short and plain statement of the claim that gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"  *Id.* (alterations omitted) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).  "The facts required . . . to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination," but rather the alleged facts "need only give plausible support to a minimal inference of discriminatory motivation."  *Littlejohn*, 795 F.3d at 311; *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) ("[A] plaintiff must allege that the employer took adverse action against [him or] her at least in part for

a discriminatory reason, and [he or] she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination."). Thus, to survive a motion to dismiss, a plaintiff need "not plead a prima facie case of discrimination," *Swierkiewicz*, 534 U.S. at 515, but "must plead enough facts to state a discrimination claim that is plausible on its face," *Roman-Malone v. City of N.Y.*, No. 11-CV-8560, 2013 WL 3835117, at *4 (S.D.N.Y. July 25, 2013). Courts making the plausibility determination "must be mindful of the elusive nature of intentional discrimination," and the concomitant frequency by which plaintiffs must "rely on bits and pieces of information to support an inference of discrimination, i.e., a 'mosaic' of intentional discrimination." *Vega*, 803 F.3d at 86 (citation, italics, and some quotation marks omitted).

Plaintiff has alleged that she is a "Hispanic American citizen" and thus is a member of a protected class for purposes of Title VII. (FAC ¶ 7.) *See Vill. of Freeport v. Barrella*, 814 F.3d 594, 607 (2d Cir. 2016) (explaining that "Hispanic" is a protected class on the basis of either race or national origin, depending on the facts of the case). Plaintiff has adequately alleged that she was qualified for her position. (*See* FAC ¶¶ 14–15.) She has also sufficiently alleged that she suffered an adverse employment action because she was terminated. (*See id.* ¶ 28.) *See also Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71–72 (2d Cir. 2019) (citing *Patrolmen's Benevolent Ass'n of City of N.Y. v. City of N.Y.*, 310 F.3d 43, 51 (2d Cir. 2002) (internal quotation marks omitted)) (explaining that "[a]n adverse employment action . . . 'might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation."). Finally, to establish that her termination was discriminatory, Plaintiff alleges that while she was terminated for failing to timely mail CSE

Notices to parents,  Molloy, a Caucasian colleague who processed the CSE Notices "in the same manner," was not terminated.  (*Id.* ¶¶ 21, 26–30.)

Defendants argue that Plaintiff has failed to adequately allege that her termination was discriminatory.  (Defs' Mem 13–15.)  "A showing of disparate treatment—that is, a showing that an employer treated plaintiff less favorably than a similarly situated employee outside his protected group—is a recognized method of raising an inference of discrimination for the purposes of making out a prima facie case."  *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) (citation and internal quotation marks omitted).  Employees are similarly situated if they are "'subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's.'"  *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 96 (2d Cir. 1999) (quoting *Mazzella v. RCA Global Communications, Inc.*, 642 F. Supp. 1531, 1547 (S.D.N.Y.1986), *aff'd,* 814 F.2d 653 (2d Cir. 1987)).  Here, Plaintiff has alleged that Molloy, the Caucasian comparator, had the same job title, the same responsibilities, and also trained Plaintiff how to complete her work.  (*See* FAC ¶¶ 16–17, 24–25, 27.)  Plaintiff's allegations are sufficient at this early stage to raise an inference of discriminatory motivation. *See, e.g.*, *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (finding Caucasian plaintiff adequately alleged discrimination where plaintiff was terminated but two Japanese employees in the same group with same supervisor were not).

Because Plaintiff has adequately stated a claim for wrongful termination, Defendants' Motion is denied.

### 2.  §§ 1981 and 1983 Claims

Defendants argue that Plaintiff has failed to allege facts sufficient to support a finding of liability on the part of Marconi or Koontz.  (Defs' Mem. 13–15.)

"[Section] 1981 does not provide a separate private right of action against state actors," and, in fact, it is § 1983 that provides the "exclusive federal remedy" for such claims. *Duplan v. City of N.Y.*, 888 F.3d 612, 619, 621 (2d Cir. 2018) (emphasis omitted); *see also Gonzalez v. City of N.Y.*, 377 F. Supp. 3d 273, 285 (S.D.N.Y. 2019) (holding that *Duplan* applies not only to claims against the municipality itself but also against individual municipal defendants). Accordingly, Plaintiff cannot bring her "federal claims against [state actors] directly under Section 1981" instead, she must locate her "right to relief for the [state actors'] alleged Section 1981 violations in Section 1983, which provides a cause of action for statutory violations committed under color of state law." *Richardson v. City of N.Y.*, No. 17-CV-9447, 2018 WL 4682224, at *11 (S.D.N.Y. Sept. 28, 2018).  As such, the Court considers Plaintiff's § 1981 claims under § 1983, as courts have done in the wake of *Duplan*.  *See Duplan,* 888 F.3d at 616  (construing plaintiff's § 1981 claims against state actors as brought under § 1983); *see also Quinones v. City of Binghamton*, 997 F.3d 461, 468 n.4 (2d Cir. 2021) ("We note that a plaintiff may not sue a municipal defendant under section 1981 alone, and instead must raise any section 1981 claims through a section 1983 action.  But plaintiffs need not invoke § 1983 expressly in order to state a claim, so long as they plead facts that plausibly indicate liability.  This Court has thus construed a plaintiff's claims against a municipality, incorrectly brought under section 1981 alone, as § 1983 claims.") (citation and quotation marks omitted); *In re N.Y.C. Dep't of Educ.*, No. 15-CV-7150, 2019 WL 1433163, at *5 (S.D.N.Y. Mar. 29, 2019) ("Following the Second Circuit's approach in *Duplan*, the Court will construe the § 1981 claims as causes of action brought under § 1983 and discuss whether the claims can survive pursuant to § 1983 caselaw.").

Claims of discrimination under § 1981 (pursuant to § 1983) are analyzed under the same framework as Title VII claims.  *See Littlejohn*, 795 F.3d at 312 ("[Plaintiff's] disparate treatment

claim under Title VII, § 1981, and § 1983 is subject to the burden shifting evidentiary framework set forth in *McDonnell Douglas*.") (citing *Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010)); *Zheng-Smith v. Nassau Health Care Corp.*, 486 F. Supp. 3d 611, 620–21 (E.D.N.Y. 2020) ("Claims for race and national origin discrimination under Title VII . . . and . . . § 1981 are all analyzed using the burden-shifting framework established by the Supreme Court in *McDonnell Douglas*."), *aff'd*, 2021 WL 4097316 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1675 (2022). "[F]or a § 1983 discrimination claim to survive a motion for judgment on the pleadings or a motion to dismiss, a plaintiff must plausibly allege a claim under the same standards applicable to a Title VII claim—and that the adverse action was taken by someone acting 'under color of state law.'" *Vega*, 801 F.3d at 89.

As discussed above, Plaintiff has adequately pled a Title VII claim. *See* § II.B.1 *supra*. Additionally, because Plaintiff has alleged that her termination was a result of recommendations from Marconi and Koontz, who are District employees, she has adequately pled a claim under § 1983. *See Vega*, 801 F.3d at 89 (holding defendants' actions were "under color of state law as [defendants were] employees of a public school") (quotation marks omitted).

Thus, Plaintiff has adequately pled a claim for wrongful termination under §§ 1981 and 1983.

### 3.  *Monell* Claim

Defendants argue that Plaintiff has failed to sufficiently alleged facts to support *Monell* liability against the District.  (*See* Defs' Mem. 10–13; Defs' Reply 5–7.)

"To state a claim under [] § 1983, the plaintiff must show that a defendant, acting under color of state law, deprived him of a federal constitutional or statutory right."  *Sykes v. Bank of Am.*, 723 F.3d 399, 405–06 (2d Cir. 2013).  However, "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature

caused a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008), *cert. denied*, 558 U.S. 933 (2009).

The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *see also Newton v. City of N.Y.*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right."). In other words, a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (italics omitted); *see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity itself commits a wrong").  Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

"In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'" *Davis v. City of N.Y.*, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003).  Normally, "a custom or policy cannot

be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Newton*, 566 F. Supp. 2d at 271; *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of N.Y.*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

Plaintiff has alleged that the District is liable on two distinct theories, which the Court will address in turn.  First, Plaintiff argues that "the District had a custom and practice of discriminating against employees based upon their race, national origin or ethnicity [because] there were other employees of the . . . District that have alleged that . . . Marconi discriminated against them in their employment based upon their race, national origin or ethnicity."  (*See* FAC ¶¶ 37–38.)  However, beyond the claim that there have been other unspecified allegations of discrimination against Marconi, Plaintiff entirely fails to identify any other incidents that would

14

indicate a pattern or practice, which is plainly insufficient to state a *Monell* claim.  *See Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (noting that "the mere invocation of the 'pattern' or 'plan' will not suffice" to state a *Monell* claim) (citation omitted); *McKeefry v. Town of Bedford*, No. 18-CV-10386, 2019 WL 6498312, at *4 (S.D.N.Y. Dec. 2, 2019) ("Plaintiff's opposition claims that the [complaint] 'clearly shows the pattern, practice or custom employed by Defendants,' . . . but she provides facts only about her case, which is insufficient to show a pattern, practice, policy or custom."); *cf. D'Alessandro v. City of N.Y.*, 713 F. App'x 1, 10 (2d Cir. 2017) (summary order) (finding that Plaintiff "[did] not sufficiently allege a pattern of similar constitutional violations by the [defendant]" because he "never mentions specific instances of prosecutorial misconduct beyond [his] own case").

Second, Plaintiff claims that the "District failed to train, supervise or discipline . . . Marconi for her discriminatory behavior against other employees she supervised, which amounts to a deliberate indifference to the rights of employees to be free of Ms. Marconi's discrimination in their workplace."  (*See* FAC ¶ 39.)  "In order to establish a *Monell* claim under either failure to train or failure to supervise, a plaintiff must establish deliberate indifference by the municipality."  *R.A. v. City of N.Y.*, 206 F. Supp. 3d 799, 803 (E.D.N.Y. 2016).  "To establish deliberate indifference[,] a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights."  *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012).  The Second Circuit has identified three requirements that must be met before a municipality's failure to train or supervise constitutes deliberate indifference:

> First, the plaintiff must show that a policymaker knows "to a moral certainty" that her employees will confront a given situation. . . . Thus, a policymaker does not exhibit deliberate indifference by failing to train employees for rare or unforeseen events. Second, the plaintiff must show that the situation either presents the

15

> employee with a difficult choice of the sort that training or supervision will make
> less difficult or that there is a history of employees mishandling the situation. . . .
> Finally, the plaintiff must show that the wrong choice by the city employee will
> frequently cause the deprivation of a citizen's constitutional rights.

*Walker v. City of N.Y.*, 974 F.2d 293, 297–98 (2d Cir. 1992) (citations omitted); *see*

*also Pettiford v. City of Yonkers*, No. 14-CV-6271, 2021 WL 2556172, at *6 (S.D.N.Y. June 21,

2021) (same).  A plaintiff must allege all three elements.  *Id.*

Here, Plaintiff has failed to allege any of the elements required to prove deliberate

indifference.  Merely formulaically reciting the cause of action is plainly insufficient.

*See McClean v. Cnty. of Westchester*, No. 17-CV-4492, 2018 WL 6329420, at *23 (S.D.N.Y.

Dec. 3, 2018), *aff'd sub nom. McClean v. City of Mount Vernon*, 776 F. App'x 725 (2d Cir.

2019) ("While a court may not apply a heightened pleading standard to *Monell* claims,

'boilerplate' conclusions as to municipal liability will not suffice, even at this early stage of the

litigation.") (citation omitted); *Turczyn ex rel. McGregor v. City of Utica*, No. 13-CV-1357, 2014

WL 6685476, at *6 (N.D.N.Y. Nov. 26, 2014) ("The amended complaint uses the label

"deliberate indifference" in reference to [plaintiff's] municipal liability claim and generically

references the City's failure to properly train and supervise, but it fails to allege facts that support

either conclusory notion."); *Guerrero v. City of N.Y.*, No. 12-CV-2916, 2013 WL 673872, at *2

(S.D.N.Y. Feb. 25, 2013) ("[B]oilerplate claims do not rise to the level of plausibility required to

state a viable *Monell* claim.") (internal quotation marks and citation omitted).

Accordingly, Plaintiff's *Monell* claim is dismissed.

## III.  Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted with respect to

Plaintiff's *Monell* claim and denied with respect to Plaintiff's Title VII and § 1981 (by way of

§ 1983) claims.  The Court will hold a status conference on May 2, 2023 at 11:30 AM.  The

Clerk of Court is directed to terminate the pending motion.  (*See* Dkt. No. 27.)


SO ORDERED.

 Dated:    March 28, 2023
              White Plains, New York

_____
            KENNETH M. KARAS
          United States District Judge

17